PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
_____ LODGED
_____ RECEIVED

**September 25, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

ERIK MICHAEL CLARKSON
DAPHNE VICTORIA CLARKSON,

        Debtors.

Case No. 05-40062

**MEMORANDUM DECISION**

This matter came on for hearing on September 6, 2007, on the Motion for Declaratory Judgment Re Enforceability of Judgment (Motion) filed by the Chapter 7 Trustee (Trustee) and Erik and Daphne Clarkson (Debtors).  Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

### FINDINGS OF FACT

In November, 2000, the Debtors filed a lawsuit (State Court Lawsuit) in Pierce County Superior Court (State Court) against Unique Construction, Inc. (Unique), seeking specific performance of a 1999 Residential Real Estate Purchase and Sale Agreement.  After several delays, the State Court set a trial date in May, 2005.  Subsequently, on January 5, 2005, the Debtors filed a voluntary Chapter 7 petition for relief.  The trial date was stricken after the Debtors filed a Notice of Bankruptcy Filing on April 12, 2005.

MEMORANDUM DECISION - 1

The Debtors' original bankruptcy schedules did not list the State Court Lawsuit as an asset of the bankruptcy estate, nor was Unique listed as a creditor. On March 11, 2005, the Debtors filed amended Schedules B and C, listing the State Court Lawsuit as an asset with a value of $14,500, and claiming the entire amount exempt. An amended Schedule F was also filed including Unique as a possible creditor. The claim was described on Schedule F as "2000 Professional Services Possible counter-claims in specific performance lawsuit, Pierce County." Unique did not file a proof of claim and the Debtors were granted a discharge on April 5, 2005.

On February 28, 2006, Unique filed a Motion to Abandon Cause of Action as Asset of Estate or, Alternatively, to Set Deadline For Debtor to Pay Requisite Retainer to Retain Special Trial Counsel. The Trustee objected on the grounds that the Debtors' attorney in the State Court Lawsuit (Attorney), had agreed to accept the case on behalf of the estate. Daphne Clarkson (Debtor) submitted a declaration objecting to abandonment and stating that she wanted to proceed with the State Court Lawsuit, as she had reached an agreement with Attorney for the payment of the retainer fee required to pursue her claim. The Debtor indicated that she had previously been unable to finance the lawsuit due to her financial problems. The Debtor further requested that she be given no less than 120 days from the date of the Court hearing on this motion to allow the home to be listed, sold, and for funds to be deposited in Attorney's trust account.

Attorney filed a declaration on March 15, 2006 stating:

2. I have reached an agreement with the Debtors for the payment of the retainer necessary to pursue the claim. I have also consulted with Mark Waldron, the Bankruptcy Trustee, concerning this arrangement.

3. Daphne Clarkson is currently listing her home for sale. She has agreed to pay $15,000 from the proceeds of the sale to our attorney trust account as a

MEMORANDUM DECISION - 2

deposit against attorneys' fees. She will be individually liable for attorneys' fees billed on an hourly basis at $250.00 per hour and for costs and expenses incurred in the litigation.

4.     Costs incurred will be considered an administrative cost of the bankruptcy. In exchange for financing the litigation from exempt property and post-petition income, the Trustee will agree to payment/reimbursement of all of Daphne Clarkson's post-petition attorneys' fees and costs in the litigation from the first dollars recovered by the Plaintiffs.

5.     If the retainer is not paid within 120 days of approval of the fee arrangement by the Bankruptcy Court, we will not pursue the claim as Plaintiffs' attorneys and it is my understanding that they will consent to its abandonment as an asset of the bankruptcy estate.

Decl. of Attorney (Docket No. 29).

On May 9, 2006, Unique, the Debtors and the Trustee filed a stipulation stating that the Debtors would have until May 22, 2006, to pay a retainer to Attorney, such that he would accept employment as special counsel for the Trustee in the State Court Lawsuit, or the lawsuit would be deemed abandoned as an asset of the estate. A Stipulated Order Setting Deadline to Pay Retainer or Abandon Lawsuit as Asset of Estate (Stipulated Order) was approved by the Court on May 10, 2006. On that same date, the Debtor filed a motion requiring the Trustee to abandon her personal residence so that she could obtain financing secured by her residence to fund the State Court Lawsuit. She indicated in this motion that value may be conferred on the Debtors' estate if successful. An Order Approving Abandonment of Property was entered on June 1, 2006.

On May 18, 2007, the Trustee filed an application to employ Attorney and his law firm as attorneys for the estate. An order authorizing employment as special counsel was entered on May 18, 2007.

The State Court Lawsuit went to trial on May 31, 2007, and June 4-6, 2007. The Trustee was never substituted as a party to the State Court Lawsuit. Following the trial, the

MEMORANDUM DECISION - 3

State Court dismissed the Debtors' claims against Unique and entered a judgment on July 27, 2007, against the Debtors, personally, in the amount of $44,136.27 for attorney's fees and costs incurred by Unique as the substantially prevailing party (Judgment). The State Court found that Unique incurred prepetition attorney's fees of $22,396.34 and prepetition costs of $871.43. The State Court found that Unique incurred postpetition fees of $26,415 and postpetition costs of $4,452.50. The State Court expressly declined to rule on the enforceability of the Judgment in light of the pending bankruptcy case.

On August 16, 2007, the Debtors and the Trustee filed a Motion for Declaratory Judgment Re Enforceability of Judgment, asking this Court to determine that the Debtors are not personally liable for the Judgment awarded to Unique. Unique has objected.

ISSUES

The issues in this case are as follows: (1) whether the Debtors are personally liable for that portion of the Judgment consisting of attorney's fees and costs incurred by Unique prepetition, and (2) whether the Debtors are personally liable for that portion of the Judgment consisting of attorney's fees and costs incurred by Unique postpetition.

CONCLUSIONS OF LAW

1.  **Prepetition Attorney's Fees and Costs**

It is undisputed that prepetition claims are generally discharged in bankruptcy. Unique, however, argues that the contractual obligation to pay attorney's fees to Unique as the prevailing party was not discharged in this case because the Debtors revived this obligation by electing to voluntarily pursue the State Court Lawsuit postpetition.

A Chapter 7 discharge "releases the debtor from personal liability for her pre-bankruptcy debts." In re Ybarra, 424 F.3d 1018, 1022 (9th Cir. 2005), cert. denied., 126 S. Ct.

MEMORANDUM DECISION - 4

2328 (2006) (citing <u>Hatton v. United States (In re Hatton)</u>, 220 F.3d 1057, 1059-60 (9th Cir. 2000)) (additional citations omitted). Pursuant to 11 U.S.C. § 727(b), a discharge granted under 727(a), "discharges the debtor from all debts that arose before the date of the order for relief under this chapter." "Debt" is defined in the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The definition of a claim in bankruptcy is broad and "designed to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" <u>Jensen v. Cal. Dep't of Health Servs. (In re Jensen)</u>, 995 F.2d 925, 929-30 (9th Cir. 1993) (citations and quotations omitted) (emphasis in the original).

Debts for attorney's fees incurred prepetition in the Ninth Circuit are normally discharged in a Chapter 7 proceeding. "The plain language of the discharge provisions thus is clear. All of the debtor's pre-petition debts, save those listed in § 523, are discharged in a Chapter 7 proceeding. Section 523 does not except pre-petition attorneys' fees from discharge." <u>In re Biggar</u>, 110 F.3d 685, 687 (9th Cir. 1997). Although cases admittedly exist in which courts have held that postpetition attorney fees survived discharge, this Court is not aware of a decision holding that discharged prepetition attorney fees could be revived by a debtor's postpetition actions.

It is undisputed that the underlying contract between the Debtors and Unique was entered into prepetition, the State Court Lawsuit was filed by the Debtors prepetition and the acts that gave rise to this portion of the award occurred prepetition. The Debtors were granted a Chapter 7 discharge on April 5, 2005. An exception to discharge under 11 U.S.C.

MEMORANDUM DECISION - 5

§ 523 has not been alleged. This claim for attorney's fees, although not reduced to judgment until postpetition, arose prepetition and is concluded by the Court to be prepetition debt discharged in the Debtors' Chapter 7 bankruptcy case.

## 2. Postpetition Attorney's Fees and Costs

Unique also argues that the judgment imposing personal liability on the Debtors for postpetition fees of $26,415 and costs of $4,452.50 was not discharged.

The Ninth Circuit Court of Appeals (Ninth Circuit) has concluded that a debtor can be personally liable for attorney fees incurred postpetition. In <u>In re Siegel</u>, 143 F.3d 525 (9th Cir. 1998), the Ninth Circuit held that attorney fees arising from litigation commenced by the debtor postpetition on a prepetition matter were not discharged as a prepetition debt. In <u>Siegel</u>, the debtor (also the mortgagee) sued the mortgagor postpetition in state court on a lender's liability claim. The mortgagor removed the state court action to U.S. District Court, which entered summary judgment in its favor and awarded attorney's fees under the terms of the note and deed of trust. The debtor argued that the claim for attorney's fees was discharged in his bankruptcy. The Ninth Circuit disagreed, reasoning that after being "freed from the untoward effects of contracts he had entered into," through his discharge, the debtor "chose to return to the fray and to use the contract as a weapon." Due to the debtor's actions, it was "perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." <u>Siegel</u>, 143 F.3d at 533. The Ninth Circuit concluded, "while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences." <u>Siegel</u>, 143 F.3d at 534.

In Ybarra, the Ninth Circuit reaffirmed the ruling of Siegel that "claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily 'return[s] to the fray.'" Ybarra, 424 F.3d at 1026 (quoting Siegel, 143 F.3d at 533-34). In Ybarra, a Chapter 7 debtor revived a dismissed, prepetition state court lawsuit against her former employer postpetition. The state court entered a judgment in favor of the employer and awarded it $456,884.03 in statutorily authorized attorney's fees and costs. The employer then moved for leave to enforce its judgment for fees and costs in bankruptcy court. The bankruptcy court ruled that the portion of the fee award incurred prepetition was discharged, but that the employer was free to collect that portion incurred postpetition ($159,030.78). The Ninth Circuit Bankruptcy Appellate Panel (BAP), in a divided decision, reversed and held that the entire fee award was discharged. In re Ybarra, 295 B.R. 609, 617 (9th Cir. BAP 2003). The Ninth Circuit reversed the BAP, and relying primarily on Siegel, held that the fees and costs incurred postpetition were not discharged on the grounds that the debtor's actions "to revive the state suit were sufficiently voluntary and affirmative to be considered 'returning to the fray.'" Ybarra, 424 F.3d at 1027.

The Trustee and the Debtors argue that this case is distinguishable from Siegel and Ybarra in that the State Court Lawsuit was pursued postpetition by the Trustee on behalf of the bankruptcy estate rather than by the Debtors personally. Thus, there is no basis for finding personal liability by the Debtors for the judgment awarded. According to the Debtors, Unique is therefore limited to a claim against the estate for the postpetition fees and costs. As the estate is not solvent, Unique would not receive a distribution on this claim.[1]

---

[1] The Trustee filed a Report of No Distribution on September 6, 2007.

MEMORANDUM DECISION - 7

In <u>Siegel</u>, the debtor independently filed a lawsuit against the judgment creditor postpetition. In <u>Ybarra</u>, the lawsuit from which the judgment arose was filed prepetition, but was pursued by the debtor postpetition after electing to take ownership of the action. <u>Ybarra</u>, 424 F.3d at 1020. In neither case, did the Chapter 7 trustee pursue the action from which the judgment for fees stemmed on behalf of the bankruptcy estate.

The facts of this case are unique. This is not a case where the Trustee substituted in as the real party in interest, hired an attorney on a contingency basis, and pursued the litigation on behalf of the estate with no involvement of the Debtors. In such an instance, there can be no doubt that the State Court judge could not have imposed personal liability on the Debtors, as they would no longer have been named parties, and the litigation would have been continued by the Trustee on behalf of the bankruptcy estate. Unique would then have been limited to a claim against the estate. If the facts were instead that the Debtors commenced the lawsuit postpetition, as in <u>Siegel</u>, or proceeded with the lawsuit postpetition entirely independent of the Trustee, as in <u>Ybarra</u>, the result would also be clearer. The law of the Ninth Circuit is that these postpetition fees would not be subject to discharge.

This case presents a more difficult fact pattern in that the Debtors' pursuit of the State Court Lawsuit was not entirely independent of the Trustee. The Stipulated Order entered on May 10, 2006, between Unique, the Debtors and the Trustee, required the Debtors to pay a retainer to Attorney that was acceptable, such that he would "accept employment as special counsel for the Trustee in the State court action." Stipulated Order at 2 (Docket No. 34). An order of employment was subsequently entered on May 18, 2007.

Despite the above, it is clear from the record before the Court that the Debtors were the driving force behind the continuance of this litigation. Attorney was apparently unwilling to

pursue the State Court Lawsuit on a contingency basis on behalf of the estate or the Debtors. The estate was insolvent so the Trustee was unwilling to pursue this litigation unless the Debtors were willing to assume liability for Attorney's fees. The Debtors therefore agreed to be personally liable for Attorney's fees and costs. Even though the Debtors would be reimbursed from the first dollars recovered, the Debtors accepted personal liability for Attorney's fees in the event they were unsuccessful. The Debtors secured sufficient funds to pay Attorney's retainer so that the State Court Lawsuit could proceed. The Trustee was never substituted as the real party in interest.

As stated in <u>Siegel</u> and <u>Ybarra</u>, the issue in this case is whether the Debtors took sufficient affirmative action postpetition, or otherwise "returned to the fray," that warrants imposing personal liability for the postpetition fees and costs awarded. <u>Ybarra</u>, 424 F.3d at 1026-27. In this case, the Debtors could have elected not to fund the litigation postpetition and be free of any liability stemming from it. If the Debtors had elected not to pursue it, the Trustee made clear that he was not going to pursue the litigation on the estate's behalf. This lawsuit only proceeded because the Debtors chose to pursue it and agreed to finance it. The potential benefit to the Debtors, if successful, was reimbursement of their Attorney's fees and costs from the first dollars recovered and payment of the $14,500 claimed as exempt. In taking that action, Unique was forced to defend the lawsuit and incur significant additional postpetition fees and costs in the process. Based on these facts, the Court concludes that the Debtors' postpetition actions in pressing the State Court Lawsuit are sufficient to find that the postpetition fees and costs at issue were not discharged in their bankruptcy.

Although not from this circuit, the bankruptcy court in <u>In re Hadden</u>, 57 B.R. 187 (Bankr. W.D. Wis. 1986), reached the same conclusion on similar facts. In <u>Hadden</u>, the

debtor voluntarily continued litigation postpetition that was initiated prepetition. The bankruptcy court refused to discharge a judgment for attorney fees incurred postpetition. The court concluded that the debtor's actions were sufficient to hold that the attorney's fees incurred postpetition were not discharged. Balancing the goal of bankruptcy to provide the debtor with a fresh start and preventing post-bankruptcy acts "undertaken with impunity," the court concluded: "If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." <u>Hadden</u>, 57 B.R. at 190. Similar to this case, the Chapter 7 trustee's involvement in <u>Hadden</u> was minimal, although he was ordered by the state court to be made a party to the state court action. <u>Hadden</u> was cited in support of the Ninth Circuit's holdings in both <u>Siegel</u>, 143 F.3d at 533, and <u>Ybarra</u>, 424 F.3d at 1024.

Based on the above, the Court concludes that the Debtors' liability for fees and costs awarded to Unique for prepetition services was discharged. The Debtors, however, are personally liable for that portion of the Judgment consisting of postpetition attorney's fees of $26,415 and costs of $4,452.50. The Court reserves ruling on Unique's request for an additional $3,750 in attorney's fees incurred in defending this Motion. If, based on this ruling, Unique determines it still has a basis for requesting such fees, they must be sought by separate motion.

DATED:   September 25, 2007

_Paul B. Snyder_
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 10